IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02325-ZLW-BNB

EDWARD ALLEN,[1]

Plaintiff,

v.

ARISTEDES ZAVARAS,
SARGENT FRACKMORE,
SARGENT BOATWRIGHT,
OFFICER S. VIGIL, and
LT. STANGER,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the following motions:

1.   The plaintiff's **Motion for Summary Judgement** [Doc. #27, filed 05/13/2010]

("Plaintiff's Motion"), and

2.   **Defendants' Motion for Summary Judgment** [Doc. #33, filed 06/18/2010]

("Defendants' Motion").

I respectfully RECOMMEND that the Plaintiff's Motion be DENIED and the

Defendants' Motion be GRANTED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,

---

[1]The plaintiff is also known as Edward Clutts.

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

2

## II.  UNDISPUTED MATERIAL FACTS[2]

1.  In 2007, the plaintiff filed Civil Action No. 07-cv-00137-ZLW-BNB.  *Complaint*, p.

9.[3]  Zavaras was not named as a defendant in that action.  Id.

2.  On April 29, 2008, the plaintiff was transferred to Kit Carson Correctional Center.

*Complaint*, p. 5.

3.  On June 23, 2008, charges for photocopying services provided by the Colorado

Department of Corrections ("DOC") Legal Access Program were increased from $.05 to $.25 for

all inmates.  *Defendants' Motion*, Ex. A-2 and Ex. A- 3, p. 2, Admission #3.  The increase in

photocopying charges was implemented in Executive Directive 12-08.  Id.  The charge is applied

to all inmates under Administrative Regulation (AR) 750-01(IV)(D)(6) and AR Form

750-01(I)(D).  Id. at Ex. A-4 and A-5.

4.  On November 19, 2008, the plaintiff filed Civil Action No. 08-cv-02506-ZLW-BNB

naming Zavaras as a defendant.  Id. at Ex. A-3, p. 2, Admission #1; Ex. A-6.

5.  On or about December 8, 2008, the plaintiff was transferred from Kit Carson

Correctional Center to Buena Vista Correctional Facility.  Id. at Ex. A-7; *Complaint*, p. 5.

6.  The reason for the transfer was listed on the Executive Assignment Order (EAO) as

---

[2]The plaintiff does not provide evidentiary support for many of his factual statements.  I
do not consider factual statements that are not supported by evidence.  I am aware that a
plaintiff's complaint may be treated as an affidavit under Fed.R.Civ.P. 56(e) to the extent it
contains statements that are based on personal knowledge and those statements have been sworn
under penalty of perjury.  C.D. Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1992).  I have
relied on the factual assertions in the Complaint to the extent they are based on personal
knowledge and to the extent they support factual statements asserted in the plaintiff's briefs.

[3]The Complaint is not consecutively paginated.  Therefore, I cite to the page numbers of
the Complaint as they are assigned by the court's docketing system.

custody issues ("CI") at Kit Carson Correctional Center ("KF") and the plaintiff's classification as an S5D. *Defendants' Motion*, Ex. A-9, § D. The "5" designation means that the inmate has had a judicial determination of a sex offense. The "D" designation means that the inmate is a sex offender who does not meet the criteria for participation in the Sex Offender Treatment and Monitoring Program. Id. at Ex. A-8, § (IV)(B)(3).

7.   On January 16, 2009, Zavaras received a request to waive service in Civil Action No. 08-cv-02506-ZLW-BNB [Doc. #15]. Zavaras waived service on January 19, 2009 [Doc. #16].

8.   On or about April 30, 2009, the plaintiff was transferred from Buena Vista Correctional Facility to Crowley County Correctional Facility. *Defendants' Motion*, Ex. A-7; *Complaint*, p. 6.

9.   The reason for the transfer was listed on the Executive Assignment Order as custody issues at Buena Vista Correctional Facility and his classification as an SD. *Defendants' Motion*, Ex. A-10, § D.

10.   On or about June 15, 2009, the plaintiff was transferred from Crowley County Correctional Facility to Arkansas Valley Correctional Facility. Id. at Ex. A-7; *Complaint*, p. 6.

11.   The reason for the transfer was listed on the Executive Assignment Order as his classification as an S5D. *Defendants' Motion*, Ex. A-11, § D.

12.   On June 18, 2009, the plaintiff refused his cell assignment at Arkansas Valley Correctional Facility. *Defendants' Motion*, Ex. A-12, p. 2; Ex. A-13, p. 2; Ex. A-14, p. 2; Ex. A-15, p. 2; Ex. A-16, p. 2; *Complaint*, p. 8.

13.   The plaintiff felt threatened by his assigned cellmate, Thad Bagby. Id. at Ex. A-3, p. 4, Interrogatory Response #5; *Complaint*, p. 8.

14.   Mr. Bagby did not threaten the plaintiff or physically harm him in the presence of the defendants.  Id. at Ex. A-12, p. 2; Ex. A-13, p. 2.

15.   On June 18, 2009, at approximately 10:00 a.m., force was used on the plaintiff in order to gain compliance after he became resistive.  Id. at Ex. A-12, "Summary Section"; Ex. A-13, "Summary Section"; Ex. A-14, "Summary Section"; Ex. A-15, "Summary Section"; Ex. A-16, "Summary Section."

16.   Defendant Frankmore took hold of the plaintiff's right arm and instructed him to go to his assigned cell.  Id. at Ex. A-12, p. 2; Ex. A-13, p. 2; Ex. A-14, p. 2; Ex. A-15, p. 2; Ex. A-16, p. 2.  The plaintiff resisted by pulling away from Frankmore and dragging her in the direction of the unit entrance.  Id.

17.   Defendant Boatwright assisted Frankmore by grabbing the plaintiff's left arm.  The plaintiff continued to resist by dragging both Frankmore and Boatwright.  Id.

18.   Once on the ground, the plaintiff became passive resistant and was non-compliant with orders to stand.  Id.

19.   Pressure point methods were used unsuccessfully to raise the plaintiff to his feet.  Id.

20.   The plaintiff became compliant and stopped resisting upon learning he would be going to medical for an anatomical medical examination.  Id. Complaint, p. 8 Complaint, p. 8.

21.   The defendants held the plaintiff in a wrist lock in order to escort him to medical.  Id.

22.   The plaintiff received Code of Penal Discipline (COPD) charges and convictions for Advocating a Facility Disruption and Disobeying a Lawful Order as a result of the incident occurring on June 18, 2009.  Id. at Ex. A-17.

The plaintiff asserts three claims for relief.  Claim One alleges that defendant Zavaras moved the plaintiff "from facility to facility" in retaliation for filing Civil Action No. 08-cv-02506-ZLW-BNB.  *Complaint*, pp. 5-7.  Claim Two alleges that defendants Frackmore, Boatwright, Vigil, and Stanger violated the plaintiff's Eighth Amendment rights by using excessive force and by being deliberately indifferent to his safety.  Id. at p. 8.  Claim Three alleges that defendant Zavaras retaliated against the plaintiff by increasing the amount inmates are charged for photocopies.  Id. at p. 9.  The plaintiff seeks declaratory relief and nominal, punitive, and "emotional" damages.  *Complaint*, p. 11.  The plaintiff does not seek injunctive relief.

## III.  ANALYSIS

### A.  Official Capacity Claims

The defendants assert that, insofar as they are sued in their official capacities, the claims must be dismissed on the basis of Eleventh Amendment immunity.[4]  *Defendants' Motion*, p. 6. The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state.  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction."  Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).  Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their

---

[4]Because this argument challenges the Court's jurisdiction, I address it prior to addressing the defendants' other arguments.

official capacities as to retroactive monetary relief but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06.

The defendants are employed by the DOC. *Complaint*, pp. 2-3. The DOC is an agency or subdivision of the State of Colorado. Consequently, the Eleventh Amendment bars suit against these defendants in their official capacities for retroactive monetary relief. Because the plaintiff does not seek prospective injunctive relief, all claims against the defendants in their official capacities should be dismissed.

## B.   Individual Capacity Claims

The defendants assert that they are entitled to qualified immunity on the plaintiff's claims. *Defendants' Motion*, p. 18. Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity not only shields a defendant from unwarranted liability, it also protects the defendant from the burdens of defending a suit. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The qualified immunity defense is available only to government officials sued in their individual capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts a qualified immunity defense on summary judgment, a heavy two-part burden shifts to the plaintiff. Medina, 252 F.3d at 1128. The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right." Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted). The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly

established at the time of the conduct at issue.'"[5]  Id.  "A right is clearly established only if there

is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

authority from other courts has found the law to be as the plaintiff maintains.  Only if the

plaintiff establishes both elements of the test does the defendant bear the traditional burden of

showing that there are no genuine issues of material fact and that he or she is entitled to

judgment as a matter of law."  Id.  "If the plaintiff fails to satisfy either part of the two-part

inquiry, the court must grant the defendant qualified immunity."  Medina, 252 F.3d at 1128.

### A.   Claim One

Claim One alleges that in retaliation for filing Civil Action No. 08-cv-02506-ZLW-BNB,

defendant Zavaras caused the plaintiff to be transferred "from facility to facility" where officials

placed him in danger; withdrew privileges and rights; and left him open for theft.[6]  *Complaint*,

pp. 5-7.  "Prison officials may not retaliate against or harass an inmate because of the inmate's

exercise of his rights to access the courts."  Smith v. Mashner, 899 F.2d 940, 947 (10th Cir.

1990).  "This principle applies even if the action taken in retaliation would be otherwise

permissible."  Id. at 948.

An inmate, however, is not "inoculated from the normal conditions of confinement

experienced by convicted felons serving time in prison merely because he is engaged in

---

[5]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Shroff v. Spellman, 604 F.3d 1179, 1188 (10th Cir. 2010).

[6]To the extent the plaintiff has attempted to expand the allegations of Claim One to include additional defendants and/or additional protected activities, *Reply in Support of Motion for Summary Judgment* [Doc. #37, p. 2], the plaintiff may not amend the Complaint in this manner.  I will not address claims raised for the first time in a brief supporting the plaintiff's summary judgment motion.

protected activity." Peterson v. Shanks, 149 F.3d 1140,1144 (10th Cir. 1998). Therefore, to

prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the

incidents to which he refers . . . would not have taken place." Id. (quotations and citation

omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because

of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted)

(emphasis in original).[7]

The presentation of circumstantial evidence such as temporal proximity, a chronology of

events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith,

899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only

means available to him--circumstantial evidence of the suspicious timing of his discipline,

coincidental transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st

Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as

"providing some support for an inference of retaliation"); Harris v. Fleming, 839 F.2d 1232,

1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were

sufficient to establish a question of retaliation).

Although circumstantial evidence may support a claim for retaliation, Zavaras cannot be

held liable unless he caused or participated in the alleged retaliation. McKee v. Heggy, 703 F.2d

479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983

liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal

---

[7]The defendants assert that Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), provides the appropriate analysis in an action for retaliatory transfer of an inmate. Defendants' Motion, p. 11. Worrell set forth the proper test to determine the existence of a First Amendment violation in the employment context. Worrell does not address the retaliatory transfer of an inmate.

connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiff does not provide any evidence to show that but for a retaliatory motive, Zavaras would not have transferred him from prison to prison. Indeed, there is no evidence that Zavaras knew of the plaintiff's protected activity at the time of the first retaliatory transfer or that he had knowledge of any of the transfers.

The plaintiff claims that the "retaliatory" transfers began when he was transferred to Buena Vista Correctional Facility on December 8, 2008. *Plaintiff's Motion*, p. 1. Zavaras was requested to waive service in Civil Action No. 08-cv-02506-ZLW-BNB on January 16, 2009 [Doc. #16].[8] The plaintiff has not provided any evidence to establish that Zavaras had knowledge of Civil Action No. 08-cv-02506-ZLW-BNB prior to receiving the request for waiver of service. Therefore, the plaintiff has failed to establish that Zavaras transferred him beginning December 8, 2008, in retaliation for filing Civil Action No. 08-cv-02506-ZLW-BNB.

In addition, in Civil Action No. 08-cv-02506-ZLW-BNB, the plaintiff attempted to hold Zavaras liable for deliberate indifference to his safety based on the same facts regarding his

---

[8]In Civil Action No. 08-cv-02506-ZLW-BNB, the plaintiff alleged that on April 29, 2008--five months *before* he filed Civil Action No. 08-cv-02506-ZLW-BNB--Zavaras knowingly transferred him to Kit Carson Correctional Facility, where he was assaulted by white supremacist gang members [Doc. #3, pp. 7-8]. In this case, he has changed his allegations so that Zavaras' alleged knowledge of the transfers occurred *after* he filed Civil Action No. 08-cv-02506-ZLW-BNB. Thus, it appears that the plaintiff is changing his factual allegations in an attempt to support his different causes of action.

transfers [Doc. #3, Claim Two].  I held an evidentiary hearing on the plaintiff's motion for injunctive relief, and I questioned the plaintiff in an attempt to determine if he had a substantial likelihood of succeeding on the merits of his claim against Zavaras.  The plaintiff admitted that he was attempting to hold Zavaras liable merely because Zavaras is the supervisor (the Executive Director) of the DOC.  *Transcript of Proceedings on January 22, 2010* [Doc. #111], 23:15 - 27:13.  Based on the plaintiff's failure to provide any evidence that Zavaras had knowledge of the plaintiff's numerous transfers within the DOC, I recommended that summary judgment enter in favor of Zavaras [Doc. #182, pp. 5-11].  In this case, the plaintiff is again attempting to hold Zavaras liable without any evidence that he had knowledge of the transfers.

Zavaras cannot be held liable for retaliatory transfers without any evidence that he had knowledge of the plaintiff's protected activity or knowledge of the transfers.  The plaintiff has failed to meet his heavy burden to establish that Zavaras violated a constitutional right.  Therefore, Zavaras is entitled to qualified immunity on Claim One.  Defendants' Motion should be granted and the Plaintiff's Motion denied insofar as they seek summary judgment on Claim One.

### B.  Claim Two

In Claim Two, the plaintiff alleges that defendants Frackmore, Boatwright, Vigil, and Stanger violated his Eighth Amendment rights by using excessive force and by being deliberately indifferent to his safety.  Id. at p. 8.

### 1.  Excessive Force

The United States Constitution dictates that one shall not be subjected to "cruel and unusual punishments." U.S. Const. amend. VIII.  The language of the Eighth Amendment

indicates "an intention to limit the power of those entrusted with the criminal-law function of government." Whitely v. Albers, 475 U.S. 312, 318, (1986) (quoting Ingram v. Wright, 430 U.S. 651, 664, (1977)).

Although the Eighth Amendment limits the use of force by prison officials, a certain degree of force may be necessary in a prison setting to maintain the discipline, order, and safety of all the prisoners.  The Eighth Amendment's restriction, however, does assure a prisoner's "right to be free from the terror of instant and unexpected death" at the hands of his keepers. Northington v. Jackson, 973 F.2d 1518, 1524 (1992) (quoting Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986)).  Accordingly, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see Whitely 475 U.S. at 320-21 (1986).

The Supreme Court also has made clear that "[d]e minimis applications of force are necessarily excluded from the cruel and unusual punishment inquiry." Northington, 973 F.2d at 1524.  In other words, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.)); see also Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'").  If the force used is so minor that any reasonable or unreasonable motive for applying it is justified, the injuries do not merit a cause of

action.  The law recognizes that a certain amount of force may be necessary and may be applied.

The plaintiff does not provide any evidence to show that defendants' use of force was not applied in a good-faith effort to maintain or restore discipline.  To the contrary, he alleges that after the defendants stated that he was being taken to the medical department for an anatomical examination, "[t]he plaintiff stood up and coopeated [sic] with staff from that point on." *Complaint*, p. 8.  He further alleges that en route to the medical department, defendant Vigil bent his handcuffed wrists backward.  Id.  However, he does not provide any evidence that Vigil's force was more than de minimis.

The plaintiff has not met his burden to establish that defendants Frackmore, Boatwright, Vigil, and Stanger used excessive force in violation of the Eighth Amendment.  The defendants are, therefore, entitled to qualified immunity for this claim, and the Defendants' Motion should be granted insofar as it seeks summary judgment on Claim Two's allegations of excessive force.

## 2.   Failure to Protect

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A prisoner asserting a claim for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference.  Id.

Although an inmate "does not have to await the consummation of threatened injury to obtain preventive relief," a plaintiff "must furnish more than a conclusory claim of being afraid."

13

Riddle v. Mondragon, 83 F.3d 1197, 1205 (10th Cir. 1996).  To satisfy the first prong of the

Farmer test, "[a] prisoner must demonstrate that the deprivation was sufficiently serious and that

a prison official's act or omission resulted in the denial of the minimal civilized measure of life's

necessities."  Grimsley v. MacKay, 93 F.3d 676, 681 (10th Cir. 1996).  "This is an objective

standard.  Such conditions have been found to exist where prison officials disregard repeated

warnings of danger to a particular prisoner and continually refuse to make the situation safer, for

example by . . . separating the prisoner from other inmates who previously have attacked him on

multiple occasions."  Id.

Here, the plaintiff alleges that his assigned cellmate, Thad Bagby, was heavily tattooed;

told the plaintiff that he was the "shot caller" for the cellhouse and "they like him there because

he keeps people in line"; and told the plaintiff that he did not want the plaintiff in his cell.

*Complaint*, p. 8.  These allegations, without more, are not sufficient to establish that Mr. Bagby

posed a sufficiently serious risk.

Moreover, the plaintiff has not provided any evidence to establish that the defendants

were deliberately indifferent.  Deliberate indifference means that the official "knows of and

disregards an excessive risk to inmate health and safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference."   Farmer, 511 U.S. at 837.  Here, there is no evidence that

defendants Frackmore, Boatwright, Vigil, and Stanger knew that Mr. Bagby was an excessive

risk to the plaintiff.  Indeed, it is undisputed that Mr. Bagby did not threaten the plaintiff or

physically harm him in the presence of the defendants.

The plaintiff has not met his burden to establish that defendants Frackmore, Boatwright,

14

Vigil, and Stanger were deliberately indifferent to his safety in violation of the Eighth Amendment. Therefore, they are entitled to qualified immunity on this claim, and the Defendants' Motion should be granted insofar as it seeks summary judgment on Claim Two's allegation regarding failure to protect.

### C.   Claim Three

Claim Three alleges that defendant Zavaras retaliated against the plaintiff for filing civil actions by increasing the amount inmates are charged for photocopies. *Complaint*, p. 9.  The allegations of Claim Three are wholly conclusory.  There are no allegations or evidence to demonstrate suspicious timing, temporal proximity, or *any* relationship between Zavaras' Executive Directive increasing photocopying costs and the plaintiff's civil actions.  Zavaras is entitled to qualified immunity on this claim, and the Defendants' Motion should be granted to the extent it seeks summary judgment in favor of Zavaras on Claim Three.

### IV.   CONCLUSION

I respectfully RECOMMEND the following:

1.   Defendants' Motion [Doc. #33] be GRANTED and that summary judgment enter in favor of the defendant on all claims against them; and

2.   Plaintiff's Motion [Doc. #27] be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A

party's objections to this recommendation must be both timely and specific to preserve an issue

for *de novo* review by the district court or for appellate review.  United States v. One Parcel of

Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

     Dated February 16, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

16